STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2025 CA 0221

DEREK LANCASTER AND ANGELA LANCASTER

VERSUS

JAMES ALEXANDER TRYFOROS AND
ALDEN ADAMS TRYFOROS

Judgment Rendered: ___DEC 3 0 2025___

* * * * *

On Appeal from the
22nd Judicial District Court
Parish of St. Tammany, State of Louisiana
Trial Court No. 2021-124843

The Honorable Alan A. Zaunbrecher, Judge Presiding

* * * * *

Patrick K. Reso
Hammond, Louisiana

Attorneys for Plaintiffs-Appellants,
Derek and Angela Lancaster

Meredith E. Chehardy
Henri S. Theriot
Metairie, Louisiana

Taylor J. Winstead
Craig J. Canizaro
Metairie, Louisiana

Attorneys for Defendants-Appellees,
James and Alden Tryforos

* * * * *

BEFORE: WOLFE, MILLER, AND FIELDS, JJ.

*Miller, J concurs without Reasons.*

**WOLFE, J.**

In this redhibition suit involving the sale of a house, the buyers appeal the dismissal of their claims on summary judgment. The sellers answer the appeal, requesting the reversal of some evidentiary rulings rendered by the trial court in connection with their summary judgment, as well as an award of attorney's fees and costs. For the outlined reasons, we grant the answer to appeal in part and reverse the summary judgment.

## FACTS AND PROCEDURAL HISTORY

On May 16, 2020, Derek and Angela Lancaster (the buyers/purchasers) agreed to purchase a house located in Covington, Louisiana, from James and Alden Tryforos (the sellers) for $460,000.00. The parties signed a Purchase Agreement that indicated the sale of the property would be "AS IS" without warranties and with a waiver of the buyers' right of redhibition. The Purchase Agreement stated, in pertinent part:

> The SELLER and the BUYER hereby acknowledge and recognize that the Property being sold and purchased is to be transferred in "as is" condition and further the BUYER does hereby waive, relieve[,] and release the SELLER for any claims or causes of action for redhibition pursuant to Louisiana Civil Code Article 2520, *et seq.* and Article 2541, *et seq.* or for reduction of Sale Price pursuant to Louisiana Civil Code Article 2541, *et seq.* Additionally, the BUYER acknowledges that this sale is made without warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code Article 2524. The SELLER and the BUYER agree that this clause shall be made a part of the Act of Sale.

On that same date, the parties also executed a Waiver of Warranty and Redhibition Rights Addendum (the Waiver of Warranty), whereby the buyers agreed that the following statement would be made a part of the Act of Sale:

> It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located hereon are conveyed by Seller and accepted by Purchaser "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the metes and bounds, zoning, operation, or suitability of the property for the use intended by

2

the Purchaser, without regard to the presence of apparent or hidden defects and with the Purchaser's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects.

Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, explicit[,] or implicit statement, representation[,] or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or non-existence of any quality, characteristic[,] or condition of the property herein conveyed. Purchaser has had full, complete[,] and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser's sole discretion, deems sufficiently diligent for the protection of Purchaser's interests.

Purchaser expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder.

Purchaser also waives any rights Purchaser may have in redhibition to a return of the purchase price or to a reduction of the purchase price paid pursuant to Louisiana Civil Code Articles 2520 to 2548, inclusive, in connection with the property hereby conveyed to Purchaser by Seller. By Purchaser's signature, Purchaser expressly acknowledges all such waivers and Purchaser's exercise of Purchaser's right to waive warranty pursuant to Louisiana Civil Code Article 2520 and 2548, inclusive.

Additionally, as required by Louisiana law at La. R.S. 9:3196-3200, the Residential Property Disclosure Act (RPDA), the sellers provided the buyers with a Property Disclosure Document dated March 17, 2020. The disclosure listed the following deficiencies with the home: (1) "some roof damage – Katrina – Replaced"; (2) "minor repair at entry doorway to sunroom leveled, replaced tile and threshold"; and (3) "ice maker only works from interior[.]" The sellers also indicated on the Property Disclosure Document that there were no additions, alterations, or structural defects on the property and that the plumbing/piping systems were free of any issues.

Pursuant to the Purchase Agreement, the buyers were afforded 14 days to conduct inspections, after which they could either elect in writing to terminate the agreement or indicate in writing the deficiencies discovered during the inspection

3

period and the desired remedies. If the sellers refused to remedy any listed deficiencies, the buyers had the option to accept the sellers' response to their written request, accept the property in its current condition, or terminate the agreement.

On May 21, 2020, William Cullen inspected the home on behalf of the buyers, Mr. and Mrs. Lancaster. Mr. Cullen prepared a report outlining the findings of his inspection and provided the report to the Lancasters. Thereafter, the Lancasters hired a qualified roofer to further evaluate the roof. The Lancasters then completed a Property Inspection Response, dated May 30, 2020, in which they elected to indicate in writing five deficiencies that they desired to have remedied. Of the five noted deficiencies/remedies, the sellers, Mr. and Mrs. Tryforos, declined two (to replace the door jamb and to pay for roof repairs), but they agreed to hire a contractor (Tunnel Vision) "to perform all items on attached quote as well as put a cover over the lift station" on the property, to repair the oven door, and to give a $3,500.00 credit towards repair of the shower in the primary bathroom. The Tryforoses made all agreed-upon repairs.

On June 29, 2020, the parties executed the final Act of Sale. The Act of Sale included the following waiver of warranty:

> SALE "AS IS" WITHOUT WARRANTIES: SELLER and BUYER hereby acknowledge and recognize that the Property being sold and purchased is to be transferred in "as is" condition and further BUYER does hereby waive, relieve[,] and release SELLER for any claims or cause of action for redhibition pursuant to Louisiana Civil Code Article 2520, et seq. and Article 2541, et seq. or for reduction of Sales Price pursuant to Louisiana Civil Code Article 2541, et seq. Additionally, BUYER acknowledges that this sale is made without warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code Article 2524. SELLER and BUYER agree that this clause shall be made a part of the Act of Sale.

The Lancasters also executed a Final Inspection Release on June 29, 2020, "to advise that the reinspection of the . . . property [was] done"; "that the property [was] in the same or better condition as at the time of the initial inspection"; and that "the

4

deficiencies cited in the Property [Inspection] Response [were] satisfactorily corrected and the condition of the property [was] acceptable."[1]

On June 29, 2021, the Lancasters filed a "Petition for Nullity of Contract, Breach of Contract, Rescission of Sale, Alternatively a Reduction in Price per Quanti Minoris, Interest, and Attorney's Fees." The Lancasters alleged that since purchasing the property, they had encountered issues with the HVAC system, the flooring, windows, ceilings, plumbing/sewerage, roofing, and water accumulation in the yard. The Lancasters also alleged that they discovered mold and/or mildew in the home, which they asserted was caused by water leakage. The Lancasters claimed the Tryforoses knew of the defective conditions at the time of the sale and intentionally concealed them. The Lancasters prayed for a rescission of the sale based on nullity of contract or alternatively a reduction in the sale price, plus damages, interest, court costs, attorney's fees, and "all other general and equitable relief reasonable and available[.]"

In response to the petition, the Tryforoses filed an answer and peremptory exceptions raising the objections of no cause of action and no right of action, in which they specifically asserted that the Lancasters had waived their right to any claims and causes of action for redhibition or for reduction of the sale price in the Act of Sale. The trial court dismissed the Tryforoses' exception of no cause of action on October 19, 2021, and referred the exception of no right of action to the merits of the matter.

On July 12, 2024, the Tryforoses filed a motion for summary judgment in which they argued that (1) the Lancasters did not act as reasonably prudent buyers in that they failed to perform further and more detailed inspections prior to executing

---

[1] The Final Inspection Release also included a handwritten clause noting that the appropriate cover for the lift station had not yet been installed. According to the notation, "Seller agree[d], at seller's expense, [to] order an appropriate cover and have installed no later than July 31, 2020." Mr. Lancaster testified that the lift station cover was installed on or before July 31, 2020.

5

the Act of Sale; (2) the Lancasters knowingly waived all warranties; and (3) the Lancasters did not have any evidence that the Tryforoses willfully misrepresented the condition of the property such that the waiver of warranty should be invalidated.

In support of their motion, the Tryforoses attached the Lancasters' petition; the scheduling order; excerpts from Mr. and Mrs. Lancaster's depositions; excerpts from Mr. and Mrs. Tryforos's depositions; the Tryforoses' answer to the petition; the deposition of Mr. Cullen, the home inspector, and his home inspection report (the Cullen report); the Property Disclosure Document; the Purchase Agreement; the Waiver of Warranty; the Property Inspection Response and Final Inspection Release; and the Act of Sale.[2]

The Lancasters filed an opposition to the Tryforoses' motion for summary judgment on July 31, 2024. The Lancasters urged the trial court to deny the motion due to remaining genuine issues of material fact as to the intent and knowledge of the Tryforoses and the reasonableness of the Lancasters, as well as unresolved questions of law. The Lancasters submitted the following evidence in opposition to the motion for summary judgment: the affidavit of the contractor, James D. Westervelt, who provided a quote for repairs to the home after the purchase; the depositions of Mr. and Mrs. Tryforos; and Mr. Lancaster's affidavit with property repair invoices and the Property Disclosure Document attached.

The Lancasters' opposition also contained objections to several exhibits attached to the Tryforoses' motion for summary judgment, including the Cullen report (attached to Mr. Cullen's deposition); the Property Disclosure Document, the Purchase Agreement, the Waiver of Warranty, and the Property Inspection Response (all attached to Mr. Lancaster's deposition); and a photograph copied into the

_____

[2] The Tryforoses also attached invoices from Tunnel Vision to their motion for summary judgment. The Lancasters objected to this evidence in their opposition to the motion for summary judgment, and the Tryforoses later withdrew this evidence from the trial court's consideration for purposes of their motion.

Tryforoses' motion for summary judgment (which was attached as an exhibit to Mr. Cullen's deposition). The Lancasters asserted that the aforementioned evidence is not competent summary judgment evidence permitted by La. Code Civ. P. art. 966(A)(4) and should therefore be excluded.

Thereafter, the Tryforoses filed a reply memorandum and a "Motion to Determine Whether Derek Lancaster and James D. Westervelt Qualify as Experts and Motion to Challenge [Their] Methodologies." In both filings, the Tryforoses moved the trial court to "disallow and strike" the opinions of Mr. Lancaster and Mr. Westervelt in their respective affidavits in support of the Lancasters' opposition to their motion for summary judgment. The Tryforoses asserted that neither Mr. Lancaster nor Mr. Westervelt were designated as experts, and therefore, they cannot express opinions in their affidavits. Alternatively, the Tryforoses argued that Mr. Lancaster's affidavit should be excluded because it is not based on personal knowledge and does not properly authenticate the invoices that were exhibits thereto.

The trial court held a hearing on the Tryforoses' motion for summary judgment on August 15, 2024. The trial court began by stating on the record its rulings on the parties' objections to the evidence. The trial court sustained the Lancasters' objections to the Cullen report and the photograph of the house that had been copied into the Tryforoses' motion, and it overruled the Lancasters' remaining objections. The trial court also overruled the Tryforoses' objections to the affidavits of Mr. Lancaster and Mr. Westervelt.[3]

After brief oral argument from counsel, the trial court granted the motion for summary judgment and dismissed the Lancasters' claims with prejudice. The trial

---

[3] Generally, if a timely objection is made to an expert's qualifications or methodologies in support of or in opposition to a motion for summary judgment, any motion in accordance with La. Code Civ. P. art. 1425(F) to determine whether the expert is qualified or the expert's methodologies are reliable shall be filed, heard, and decided prior to the hearing on the motion for summary judgment. See La. Code Civ. P. art. 966(D)(3). No such hearing was required in this case because the Lancasters conceded that they did not intend to offer Mr. Lancaster and Mr. Westervelt as experts.

court specifically noted that the Lancasters were provided with the Property Disclosure Document, retained a home inspector, negotiated for a reduction in the purchase price/closing costs of $3,500.00, and executed the Final Inspection Release. The trial court also noted that the Lancasters executed a valid Waiver of Warranty, which they read before they signed, and failed to submit any evidence that would demonstrate the Tryforoses "willfully misrepresented" the property's condition. Finally, the trial court stated, "Any defects in the property later discovered could have been ascertained without difficulty, inconvenience, or special skill." A judgment was signed on September 20, 2024.

The Lancasters filed a timely appeal. In a single assignment of error, the Lancasters assert the trial court erred when it granted summary judgment in favor of the Tryforoses because the causes of action brought by the Lancasters inherently involve questions of material fact such as intent, malice, and other conditions of the mind.[4] The Tryforoses answered the appeal seeking reversal of the trial court's evidentiary rulings concerning their objections to the affidavits by Mr. Lancaster and Mr. Westervelt and the Lancasters' objection to the Cullen report and the photograph of the house. Additionally, the Tryforoses seek an award of attorney's fees and all costs incurred in conjunction with this appeal.

## APPLICABLE LAW

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. La. Code Civ. P. art.

---

[4] The Lancasters also state in their appellant brief that the Tryforoses filed their motion for summary judgment "prior to the discovery cutoff . . . and the crucial, scheduled deposition of the Lancasters' realtor." Nevertheless, the Lancasters did not file a motion to continue at the trial court nor did they include this as an assignment of error on appeal. Therefore, this issue is not before us. See Uniform Rules – Courts of Appeal, Rule 1-3.

966(A)(3); **Smith v. Grantham**, 2023-0881 (La. App. 1 Cir. 9/4/24), 394 So.3d 316, 323; **Trombettas v. Williams**, 2023-0250 (La. App. 1 Cir. 9/15/23), 372 So.3d 360, 365, writ denied, 2023-01532 (La. 1/17/24), 377 So.3d 249.

A motion for summary judgment is properly granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(A)(3). The initial burden of proof is on the party filing the motion for summary judgment. See La. Code Civ. P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment,[5] the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. Code Civ. P. art. 966(D)(1). Thereafter, summary judgment shall be granted unless the adverse party produces factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1).

In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. **Ellis v. Circle L Trucking, L.L.C.**, 2021-0457 (La. App. 1 Cir. 12/30/21), 340 So.3d 985, 988. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Ellis**, 340 So.3d at 988-989. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal

---

[5] A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. Code Civ. P. art. 966(F).

dispute. **Wessinger v. Morris**, 2025-0019 (La. App. 1 Cir. 10/29/25), ___ So.3d ___, ___, 2025 WL 3018439, *2.

Further, summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. **Pontchartrain Partners, LLC v. Terrebonne Levee and Conservation District**, 2024-0982 (La. App. 1 Cir. 2/28/25), 407 So.3d 956, 963, writ denied, 2025-00422 (La. 6/17/25), 411 So.3d 637. These subjective facts call for credibility evaluations and the weighing of testimony. **Berthelot v. Indovina**, 2021-1546 (La. App. 1 Cir. 6/3/22), 343 So.3d 209, 215. A trial court cannot make credibility decisions on a motion for summary judgment. **Lucas v. Maison Insurance Company**, 2021-1401 (La. App. 1 Cir. 12/22/22), 358 So.3d 76, 85. However, a court may grant summary judgment based on an intent issue when no genuine issue of material fact concerning the pertinent intent exists. **Pontchartrain Partners, LLC**, 407 So.3d at 963. If the opponent rests merely on conclusory allegations, improbable inferences, and unsupported speculation, summary judgment may be appropriate. See **Quereau v. Sam & Brett LLC**, 2024-0243 (La. App. 1 Cir. 10/3/24), 405 So.3d 847, 854. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. **Smith**, 394 So.3d at 323-324; **Jeandron v. Cenac**, 2022-1158 (La. App. 1 Cir. 4/14/23), 365 So.3d 851, 857.

Under La. Civ. Code art. 2520, the seller warrants the buyer against redhibitory defects in the thing sold. A defect is redhibitory when the defect renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought it had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. A defect is also redhibitory when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it, but for a

10

lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price. La. Civ. Code art. 2520. However, a seller owes no warranty for defects that were known to the buyer at the time of the sale, or for defects that a reasonably prudent buyer should have discovered. La. Civ. Code art. 2521. Further, under La. Civ. Code art. 2548, a seller and buyer may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer.

The seller bears the burden of proving the buyer has waived the warranty against redhibitory defects. **McDonald v. D'Amico**, 2023-0884 (La. App. 1 Cir. 3/22/24), 385 So.3d 1162, 1168, writ denied, 2024-00444 (La. 6/19/24), 386 So.3d 674. A waiver of warranty against redhibitory defects is strictly construed against the seller. **McDonald**, 385 So.3d at 1168. Nonetheless, even when the parties agree to an exclusion or limitation of the warranty against redhibitory defects, such is not binding in circumstances where the seller has declared that the thing has a quality that he knew it did not have. Stated differently, a seller who knows of a redhibitory defect and fails to disclose it, but instead obtains the buyer's waiver against redhibitory defects, commits fraud; and, such fraud invalidates the waiver. **Id.**

In addition to the Civil Code articles regarding redhibition, the RPDA requires a seller of a residential property to complete and deliver a Property Disclosure Document (in a form prescribed by the Louisiana Real Estate Commission) to the buyer that discloses, at a minimum, "known defects" in the residential property. See La. R.S. 9:3196(2). A "known defect" is a condition known to the seller that has a substantial adverse effect on the property's value, significantly impairs the health or safety of the property's future occupants, or significantly shortens the property's expected normal life, if not corrected. See La. R.S. 9:3196(1)(a)-(c). The seller shall complete the Property Disclosure Document in *good faith* to the best of his or her belief and knowledge as of the date it is completed and signed. La. R.S.

11

9:3198(B)(1). However, a Property Disclosure Document shall not constitute a warranty by the seller. See La. R.S. 9:3198(D)(1). The information contained therein is for disclosure purposes only and is not intended to be a part of any contract between the buyer and the seller. La. R.S. 9:3198(D)(1). The Property Disclosure Document may not be used as a substitute for any inspections or warranties that the seller or buyer may obtain, and the RPDA does not preclude the buyer's rights or duties to inspect the physical condition of the property. La. R.S. 9:3198(D)(2). Buyers cannot use their alleged reliance on a Property Disclosure Document as an excuse for failing to obtain a comprehensive home inspection or failing to follow the advice of an inspector to obtain more extensive inspections. **McDonald**, 385 So.3d at 1174.

A seller shall not be liable for any error, inaccuracy, or omission of information required in the Property Disclosure Document, if the error, inaccuracy, or omission was not a *willful misrepresentation* according to the best of the seller's information, knowledge, and belief. La. R.S. 9:3198(E)(1); **Smith**, 394 So.3d at 325. However, a seller who makes a willful misrepresentation in a Property Disclosure Document can be found liable for fraud. **McDonald**, 385 So.3d at 1168 (citing **Stutts v. Melton**, 2013-0557 (La. 10/15/13), 130 So.3d 808, 813).

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. Civ. Code art. 1953. While fraud may result from silence or inaction, mere silence or inaction without fraudulent intent does not constitute fraud. La. Civ. Code art. 1953; **Minton v. Acosta**, 2021-1180 (La. App. 1 Cir. 6/3/22), 343 So.3d 721, 730. Fraudulent intent, or the *intent to deceive*, is a necessary and inherent element of fraud. Fraud cannot be predicated upon mistake or negligence, no matter how gross. **Minton**, 343 So.3d at 730. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial

12

evidence. La. Civ. Code art. 1957; **Minton**, 343 So.3d at 730. However, fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. **Vitter v. Blaize**, 2022-1369 (La. App. 1 Cir. 9/20/23), 376 So.3d 193, 197 (citing La. Civ. Code art. 1954).

## ANALYSIS OF EVIDENTIARY RULINGS

In their answer to the appeal, the Tryforoses seek modification of the trial court's September 20, 2024 judgment by requesting reversal of certain evidentiary rulings. Because our determination of the admissibility of evidence will affect our review of the trial court's grant of summary judgment, we address the portion of the Tryforoses' answer to the appeal regarding the trial court's evidentiary rulings first.

The abuse of discretion standard applies to the trial court's ruling on an objection to a document filed in support of or in opposition to a motion for summary judgment that is raised by a party in a timely filed opposition or reply memorandum in accordance with La. Code Civ. P. art. 966(D)(2). **McKay v. Hospital Service District No. 1 of Tangipahoa Parish**, 2023-1244 (La. App. 1 Cir. 10/11/24), 405 So.3d 869, 875. The trial court, and this court on *de novo* review, may only consider evidence that is admissible under the express provisions of La. Code Civ. P. arts. 966 and 967. **Smith**, 394 So.3d at 328.

First, the Tryforoses ask that their objections to Mr. Lancaster's and Mr. Westervelt's affidavits be sustained. When an objection to an affidavit in support of or in opposition to a motion for summary judgment is made in accordance with La. Code Civ. P. art. 966(D)(2), the only issue to be determined is whether that affidavit is compliant with La. Code Civ. P. art. 967. **McKay**, 405 So.3d at 875. Article 967(A) provides, in part, that affidavits in support of or in opposition to motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

13

competent to testify to the matters stated therein." Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. **Griffin v. Design/Build Associates, Inc.**, 2018-1720 (La. App. 1 Cir. 5/31/19), 278 So.3d 399, 404. Portions of affidavits not based on the personal knowledge of the affiant should not be considered by the district court in deciding a motion for summary judgment. **Griffin**, 278 So.3d at 404.

If a witness is not testifying as an expert, such as Mr. Lancaster and Mr. Westervelt,[6] testimony in the form of opinions or inferences is limited to those opinions or inferences that are rationally based on the perception of the witness and are helpful to a clear understanding of his testimony or the determination of a fact in issue. See La. Code Evid. art. 701. Further, when a motion for summary judgment is made and supported in accordance with La. Code Civ. P. art. 967(A), an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. Code Civ. P. art. 967(B).

The Tryforoses argue that certain portions of Mr. Lancaster's affidavit are conclusory and contain subjective opinions in the following ways: (1) he states that "[t]he potential problem areas listed in the [Cullen] report were minor"; (2) he concludes the alleged damages found during repairs of the property were "extensive and intentionally hidden"; and (3) he states that mold was "covered up by fresh paint" to disguise the mold's presence. The Tryforoses also argue that these statements in Mr. Lancaster's affidavit are "argument and not . . . statement[s] of facts of which Mr. Lancaster has personal knowledge."

Although Mr. Lancaster's affidavit contains the assertion that the statements made therein are based on his "personal knowledge," this statement alone is

---

[6] See footnote 3, *supra.*

14

insufficient to satisfy the Article 967 requirement for personal knowledge. See **LaCerte v. Purpera**, 2024-0670 (La. App. 1 Cir. 5/23/25), 417 So.3d 846, 856, (citing **Unifund CCR Partners v. Perkins**, 2012-1851 (La. App. 1 Cir. 9/25/13), 134 So.3d 626, 631). Rather, the affidavit must set forth facts or information to establish the basis of either the affiant's personal knowledge or competency to testify to the matters stated in the affidavit. See **Unifund CCR Partners**, 134 So.3d at 631.

All three of the statements in Mr. Lancaster's affidavit to which the Tryforoses object merely restate the allegations of the Lancasters' petition and are not based on any factual support contained in Mr. Lancaster's affidavit or otherwise attached to the Lancasters' opposition to the motion for summary judgment. Therefore, these three statements do not comply with the requirements set forth in La. Code Civ. P. art. 967 for opposing affidavits and are incompetent summary judgment evidence. As such, we find the trial court abused its discretion in overruling the Tryforoses' objection to the following statements in Mr. Lancaster's affidavit and considering them: (1) "The potential problem areas listed in the [Cullen] report were minor"; (2) the alleged damages found during repairs of the property were "extensive and intentionally hidden"; and (3) mold was "covered up by fresh paint" to disguise the mold's presence. Thus, we will not consider these statements on our *de novo* review of the Tryforoses' motion for summary judgment.

In Mr. Westervelt's affidavit, he averred that, "[b]eginning in May or June 2020[,] the Lancasters engaged Sieverding Construction to review and provide a quote for repairs to the issues disclosed in the [Cullen] report . . . and to make repairs after they purchased it." According to Mr. Westervelt, in the course of making the repairs, "we uncovered numerous instances of serious construction defects, water damage, mold[,] and rot that appeared staged to avoid detection." Mr. Westervelt concluded that the problems with the home were so extensive that "no one would

have been able to reside there without knowledge of the problems, including but not limited to mold that was painted over, roof leaks, sewage back up, and windowsills that were sculpted with foam and then [painted] to look like wood."

The Tryforoses contend Mr. Westervelt's affidavit offers "conclusory and subjective opinions" by declaring (1) the alleged defects discovered during renovation appeared "staged to avoid detection"; (2) nobody would have been able to live in the property without knowledge of alleged serious construction defects, water damage, mold, and rot; (3) mold was painted over; and (4) windowsills were sculpted with foam and painted over to look like wood.

In this case, Mr. Westervelt averred that he is employed as an "Estimator and Project Manager" by Sieverding Construction. However, the affidavit contains no facts or information setting forth the basis of his personal knowledge or his competency to testify to the matters stated in the affidavit, such as whether he personally viewed the home or reviewed reports provided to him related to the home or whether the information contained in his affidavit is information that he would be privy to in his role as "Estimator and Project Manager" at Sieverding Construction. Thus, Mr. Westervelt's affidavit fails to establish any predicate fact showing that he has personal knowledge of the matters set forth in the affidavit. Therefore, the affidavit does not satisfy the requirements of La. Code Civ. P. art. 967(A), is not competent summary judgment evidence, and will not be considered by this court on our *de novo* review.

The Tryforoses also assert that Mr. Lancaster's affidavit is insufficient to authenticate the Wegman invoices and the Sieverding invoices that were attached thereto. Documents that are not included in the exclusive list set forth in La. Code Civ. P. art. 966(A)(4)[7] are not permitted unless they are properly authenticated by

---

[7] The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance

an affidavit or deposition to which they are attached. **Jeandron**, 365 So.3d at 856. See also, La. Code Civ. P. art. 966, comments-2015, comment (c). The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. Code Evid. art. 901(A).

Mr. Lancaster's affidavit states that he and his wife "expended over $200,000[.00] just to repair the latent [defects] and make the home habitable[.]" In support of this statement, Mr. Lancaster cites the Sieverding invoices. The Sieverding invoices are printed on Sieverding Construction letterhead and are addressed to the Lancasters at "Bayberry Drive." Mr. Lancaster's affidavit affirmatively states that he and his wife purchased a home located on Bayberry Drive. We find the affidavit of Mr. Lancaster is sufficient to support a finding that the Sieverding invoices are what the Lancasters claim they are; therefore, we find no abuse of the trial court's discretion in overruling the Tryforoses' objection to those invoices. However, Mr. Lancaster did not establish personal knowledge as to the Wegman Construction invoices. Wegman was the Tryforoses' contractor. There is no evidence Mr. Lancaster saw, heard, or perceived the Wegman invoices or any repairs made by Wegman Construction with his own senses. As such, we find the trial court abused its discretion in considering the Wegman invoices in opposition to the Tryforoses' motion for summary judgment, and they will not be considered on our *de novo* review.

Next, the Tryforoses seek reversal of the trial court's ruling that sustained the Lancasters' objection to the Cullen report. The sole reason for exclusion of this evidence offered by the Lancasters is that it is not permissible summary judgment evidence under La. Code Civ. P. art. 966(A)(4)(a). Although the Cullen report itself

policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. La. Code Civ. P. art. 966(A)(4)(a).

17

does not fall within any of the categories set forth in La. Code Civ. P. art. 966(A)(4)(a), the Cullen report was introduced during Mr. Cullen's deposition, which is competent summary judgment evidence under Article 966(A)(4)(a) and was attached to the Tryforoses' motion for summary judgment. Mr. Cullen testified that he authored the report and that his signature appears on the report. Mr. Cullen also stated that the report accurately reflects his findings during the home inspection. Consequently, the Cullen report was properly authenticated by Mr. Cullen and is therefore admissible summary judgment evidence.[8] See **Jeandron**, 365 So.3d at 856. Accordingly, we find the trial court abused its discretion in sustaining the Lancasters' objection to the Cullen report, and we will consider the Cullen report on our *de novo* review of the Tryforoses' motion for summary judgment.

Lastly, the Tryforoses seek reversal of the trial court's evidentiary ruling that excluded a photograph of the home from consideration on summary judgment. The photograph was pasted into the Tryforoses' motion for summary judgment and also appears on the cover page of the Cullen report. Authentication of a photograph may be accomplished by the testimony of anyone with sufficient knowledge to aver that the picture fairly represents the subject matter it purports to portray. **Henry v. McKinney**, 2021-1218 (La. App. 1 Cir. 6/2/22), 342 So.3d 985, 993 n.4, writ denied, 2022-01241 (La. 12/6/22), 350 So.3d 872. During Mr. Cullen's deposition, he testified that either he took the photo or he obtained the photo from the real estate agent's listing. Additionally, Mr. and Mrs. Lancaster both admitted during their respective depositions that the photo on the cover of the Cullen report is a photo of the property at issue. Since it is undisputed that the Lancasters purchased the

---

[8] Cf. **Loupe v. Roman Catholic Church of Diocese of Baton Rouge**, 2022-1153 (La. App. 1 Cir. 4/14/23), 365 So.3d 844, 850, writ denied sub nom. **Loupe on Behalf of G.L. v. Roman Catholic Church of Diocese of Baton Rouge**, 2023-00758 (La. 10/10/23), 371 So.3d 458. In **Loupe**, this court determined excerpts from a school handbook were not authenticated by the deponent when she did not identify the handbook excerpts, testify as to her familiarity with the document, or confirm the excerpts were what they purported to be. **Loupe**, 365 So.3d at 850.

18

property from the Tryforoses, we find the Lancasters have sufficient knowledge to aver the picture fairly represents the subject matter it purports to portray. Accordingly, the trial court abused its discretion in excluding the photograph of the home, and we will consider it on our *de novo* review of the Tryforoses' motion for summary judgment.

## SUMMARY JUDGMENT ANALYSIS

Having determined the admissible summary judgment evidence before us, we now turn to the merits of the Tryforoses' motion for summary judgment. The Tryforoses, as movers, bear the initial burden of proof on summary judgment to establish that the Lancasters waived the warranty against redhibitory defects. See La. Code Civ. P. art. 966(D)(1); **McDonald**, 385 So.3d at 1168.

In support of their motion, the Tryforoses attached, among other things, the Purchase Agreement, the Waiver of Warranty, and the Act of Sale. All three of those documents contain a waiver of warranty and all claims based in redhibition. The Tryforoses also introduced excerpts from the depositions of Mr. and Mrs. Lancaster. The Lancasters admitted that they read, signed, and understood the Purchase Agreement and the Waiver of Warranty. Mrs. Lancaster admitted that she purchased the property without any warranties. Mrs. Lancaster also admitted to reading, signing, and understanding the Act of Sale. Considering this evidence, we find the Tryforoses successfully carried their initial burden on summary judgment of proving the buyer waived the warranty against redhibitory defects. See **McDonald**, 385 So.3d at 1168. Therefore, the burden shifted to the Lancasters to produce evidence sufficient to demonstrate a genuine issue of material fact or that the Tryforoses are not entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(D)(1).

In opposition to the motion for summary judgment, the Lancasters argued that the Tryforoses willfully misrepresented the state of the property in the Property Disclosure Document. The Lancasters also asserted that their Waiver of Warranty

19

should be invalidated because the Tryforoses acted fraudulently. A waiver of warranty may only be vitiated if the seller commits fraud. See **McDonald**, 385 So.3d at 1168. Similarly, a seller is not liable for any error, inaccuracy, or omission of information required in the Property Disclosure Document if the error, inaccuracy, or omission was not a willful misrepresentation according to the best of the seller's knowledge, information, or belief. **McDonald**, 385 So.3d at 1168. Therefore, under either theory, the Lancasters bear the burden of producing factual support that the Tryforoses acted with fraudulent intent. See **McDonald**, 385 So.3d at 1168; **Minton**, 343 So.3d at 730-31.

The Lancasters attached Mr. Lancaster's affidavit to their opposition to the motion for summary judgment. Mr. Lancaster attested that, within three weeks of living in the home, he and his wife experienced problems with (1) the ceiling leaking in multiple areas of the first story of the home; (2) mold; and (3) sewage backing up in both the upstairs bathtub and shower. Mr. Lancaster further attested that they discovered the following, previously undisclosed issues: water accumulation on the front porch and back patio; broken pipes causing water to accumulate in the front yard; alterations made to the house; plumbing issues; mold; and roof defects.

The Property Disclosure Document was attached to Mr. Lancaster's affidavit. Therein, the Tryforoses disclosed roof damage from Hurricane Katrina but advised the roof was "[r]eplaced." The Tryforoses also disclosed "minor repair at entry doorway to sunroom leveled, replaced tile, and threshold." Mr. Lancaster's affidavit also referenced numerous invoices from Sieverding Construction, which showed work performed on the HVAC system, bathroom exhaust vents, window and rotten door jamb repairs/installation, re-piping and plumbing, concrete repair, tile and floor replacement labor, gutter repair, sheetrock labor, and painting labor.

The Lancasters attached Mr. and Mrs. Tryforos's depositions to their opposition to the motion for summary judgment to demonstrate that the Tryforoses

20

were aware of certain repairs, conditions, etc. that were not disclosed on the Property Disclosure Document. When Mr. Tryforos was asked at his deposition if he ever had any plumbing work done on the house, he answered in the affirmative, which is directly contrary to his disclosure. Mr. Tryforos explained that a sump pump (lift station) was installed because there were issues with getting sewage out to the main plumbing line. He stated that, on one occasion, sewage backed up into the house but it was minor. He stated that, as a result, he was advised a sump pump would alleviate the situation and "it did." He also said that the lift station "functioned the way it was supposed to" but admitted there were minor repairs done on it. Additionally, Mrs. Tryforos testified that she did not recall any sewage backups after the sump pump was installed.

Mr. Tryforos also revealed during his deposition that around 2010, they discovered some "pipes that had broken from tree roots[,]" which presented itself in the form of water accumulating in the front yard, and those pipes were replaced. Mrs. Tryforos testified extensively regarding plumbing maintenance performed over the course of the last 10 years they were in the home, including repair to a broken pipe, leaking toilets, and slow or impaired drainage. However, the Tryforoses marked "No" on the Property Disclosure Document as to whether they were aware of any issues with water accumulation or the piping system. When asked why these plumbing issues were not disclosed to the Lancasters, Mrs. Tryforos stated, "[W]e just thought it was home maintenance and not a problem." Mr. and Mrs. Tryforos also admitted that the yard generally holds water after a heavy rain and that they would sporadically have issues with the plumbing clogging.

Mr. and Mrs. Tryforos both testified regarding significant alterations made to the home in 1999, when they first purchased it, and again around 2010. However, the Tryforoses marked "No" on the Property Disclosure Document when asked

whether there had been any additions or alterations made to the structures during the time they owned the property.

As to the presence of mold, the Tryforoses each testified that they were never aware of mold in the home. Both also testified that it was never damp, humid, or musty inside the house, and neither reported any respiratory issues while living there. Mr. Tryforos stated that any issues he had with moisture in the home, such as the leaky shower in the primary bathroom, were handled by his contractor, Mr. Wegman, who never informed him that he should inspect for mold. This is consistent with the Tryforoses' response on the Property Disclosure Document regarding mold/mildew.

With regard to the alleged roof and ceiling defects, the Tryforoses stated they got a new roof in 1999 when they first purchased the property. They also stated the post-Katrina repairs were the only roof work done thereafter. Mr. Tryforos stated that he never saw water coming through the roof or the ceiling. These statements are consistent with the responses on the Property Disclosure Document. This is also true of the windows and HVAC systems. The Property Disclosure Document noted no issues with either, and the Tryforoses' deposition testimony does not demonstrate they had knowledge of issues with either.

In sum, the only conflicting responses, *i.e.* misrepresentations, the Tryforoses gave in their Property Disclosure Document regarding the home were with respect to (1) the condition of the plumbing and piping systems in the house; (2) whether the home underwent any alterations during their ownership; and (3) the water accumulation in the yard. Regarding the failure to disclose any alterations or additions to the home, the Tryforoses were not necessarily required to make such a disclosure. The RPDA only requires the disclosure of "known defects," see La. R.S. 9:3196(2), which are defined in La. R.S. 9:3196(1) as conditions *known* to the seller that have a substantial adverse effect on the property's value, significantly impair

22

the health or safety of the property's future occupants, or significantly shorten the property's expected normal life, if not corrected. There is no evidence that the alterations or additions to the home at issue qualify as a "known defect" under the RPDA and should have been disclosed to the Lancasters.

Secondly, a seller owes no warranty for defects that were known to the buyer at the time of the sale or for defects that a reasonably prudent buyer should have discovered. La. Civ. Code art. 2521. The evidence demonstrates that the Lancasters were aware of some, but not the full extent, of the issues related to the piping and plumbing systems, especially regarding broken pipes, water accumulation in the yard, leaking toilets, sewage backups into the house, and impaired drainage. The Property Inspection Response identified a sewage blockage as a deficiency; noted there was a leaking connection and hole at the lift station; and stated not all of the sewer line could be inspected. The proposed remedy was for the Tryforoses to hire Tunnel Vision to perform all items "on attached quote"[9] and to install a cover over the lift station. The Tryforoses accepted this remedy, and the Lancasters testified that the Tryforoses complied with all conditions of the Property Inspection Response. Mrs. Lancaster specifically admitted that, in accordance with the parties' agreement, Tunnel Vision "ran a camera from the house out towards the sewer, and they found a blockage" that was removed on June 8, 2020.

The evidence also demonstrates that the Lancasters knew of issues related to the HVAC system, moisture damage, the roof, and suspected mold, for which Mr. Cullen recommended further inspection and evaluation by a professional in his inspection report. The Lancasters hired a roofer to evaluate the roof before purchase, yet the only roof-related item listed on the Property Inspection Response was a request for the Tryforoses to hire a roofer to repair a soft spot and replace a missing

---

[9] The "attached quote" referenced in the Property Inspection Response does not appear to be in the record.

23

boot cover. The Lancasters also requested that the Tryforoses repair water damage to the door jamb at the sunroom. The Tryforoses rejected these proposed remedies, and the Lancasters chose to go forward with the sale nevertheless.

Similarly, the Lancasters did not note any issues with the HVAC system or suspected mold on the Property Inspection Response although both were raised as potential problem areas in the Cullen report. Mr. Lancaster stated in his deposition that he was aware of the musty smell on the second story before purchasing the property and he discussed it with his contractor. Mr. Lancaster explained that he was aware of "some water issues" and stated that he and his contractor would address the source of the moldy smell, "whatever it was."[10] Mr. Lancaster did not recall if an HVAC specialist was retained as recommended by Mr. Cullen. The Lancasters also stated they were aware of the issues with the windows before purchasing the property but did not "evaluate the situation" before the closing.

After our *de novo* review of the admissible summary judgment evidence and the applicable jurisprudence, we conclude the trial court erred in granting summary judgment in favor of the Tryforoses in this case. It is true that the Tryforoses owed no warranty for those defects that were known to the Lancasters at the time of sale or those defects that should have been discovered had the Lancasters acted as reasonably prudent buyers. However, we find there are genuine issues of material fact remaining as to whether the Tryforoses *willfully* misrepresented the condition of the property such that the Lancasters' waiver of warranty should be invalidated. Also, whether the Lancasters acted as *reasonably* prudent buyers in response to the pre-purchase Cullen report is an issue that cannot properly be determined on summary judgment. See **Baldwin v. Board of Supervisors for University of Louisiana Systems**, 2006-0961 (La. App. 1 Cir. 5/4/07), 961 So.2d 418, 422 (issues

---

[10] There is no evidence as to whether the Lancasters hired a mold expert prior to purchase.

24

that require the determination of reasonableness of acts and conduct of parties under all facts and circumstances cannot ordinarily be disposed of by summary judgment). See also, **CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.,** 2018-1609 (La. App. 1 Cir. 12/3/18), 276 So.3d 1053, 1063, writs denied, 2018-02088, 2018-02018 (La. 2/11/19), 263 So.3d 1151, 1153 (a motion for summary judgment is rarely appropriate for disposition of a case requiring judicial determination of subjective facts or the reasonableness of acts and conduct of parties).

Determinations based on subjective facts such as motive, *intent*, good faith, *knowledge*, or malice are not appropriate for summary judgment. **Robins v. Coles,** 2023-1343 (La. App. 1 Cir. 8/26/24), 395 So.3d 345, 351, writ denied, 2024-01179 (La. 12/11/24), 396 So.3d 965. It is not the function of the trial court on a motion for summary judgment to determine, or even inquire into, the merits of the issues raised, or to weigh conflicting evidence of material fact. **King v. Town of Clarks,** 2021-01897 (La. 2/22/22), 345 So.3d 422, 423 (*per curiam*). Rather, the court must view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. **Id.** Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. See La. Code Civ. P. art. 966(A)(3); **King,** 345 So.3d at 423. The issue of whether the Tryforoses willfully misrepresented the condition of the property by failing to disclose the water accumulation problems, the alterations to the property, and defects in the piping system in the Property Disclosure Document, all require critical credibility determinations that cannot be made on summary judgment. See **White v. Herbert,** 2022-1333 (La. App. 1 Cir. 6/2/23), 369 So.3d 898, 902. Accordingly, we reverse the summary judgment granted in favor of the Tryforoses.

25

## ATTORNEY'S FEES AND COSTS

In their answer to the appeal, the Tryforoses seek attorney's fees and costs incurred for defending the appeal. According to the Tryforoses, "[t]he appeal taken by the [Lancasters] is completely without merit and was taken vexatiously for the sole purpose of harassment and delay." Under La. Code Civ. P. art. 2164, appeals are favored, and damages will not be awarded unless they are clearly due. **Benoist v. Jackson National Life Insurance Company**, 2022-0879 (La. App. 1 Cir. 3/1/23), 362 So.3d 957, 963. Damages for frivolous appeal are only allowed when it is obvious that the appeal was taken solely for delay, or that counsel is not sincere in the view of the law he advocates. The slightest justification for an appeal precludes damages for frivolous appeal. **Id**. After considering the Lancasters' arguments made before this court on appeal, we decline to assess damages for frivolous appeal. We find that the Lancasters' counsel sincerely viewed the law as advocated, and the Lancasters were successful in their appeal. Therefore, we deny the Tryforoses' answer to the appeal in part with respect to their request for attorney's fees as well as the assessment of appellate court costs.

## DECREE

We find the trial court abused its discretion in sustaining Derek and Angela Lancasters' objections to William Cullen's report and the photograph of the property at issue that were attached to James and Alden Tryforoses' motion for summary judgment. Additionally, we find the trial court abused its discretion in overruling James and Alden Tryforoses' objection to the Wegman Construction invoices due to insufficient authentication, to James Westervelt's affidavit, and to certain portions of Derek Lancaster's affidavit as set forth in this opinion. As such, we grant James and Alden Tryforoses' answer in those respects.

After *de novo* review of James and Alden Tryforoses' motion for summary judgment and all admissible evidence in support of and in opposition thereto, we

reverse the trial court's September 20, 2024 judgment granting summary judgment in favor of James and Alden Tryforos and dismissing all of the claims asserted against them by Derek and Angela Lancaster.

James and Alden Tryforoses' answer to the appeal is denied with respect to their request for attorney's fees and the assessment of appellate court costs. All costs of this appeal are assessed to James and Alden Tryforos.

**SUMMARY JUDGMENT REVERSED; ANSWER TO APPEAL GRANTED IN PART, DENIED IN PART.**